<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

HERBERT COWAN,                          :
                                        :      Civil Action No. 14-4849(SRC)
              Petitioner,               :
                                        :
      v.                                :      **OPINION**
                                        :
STEPHEN D'ILIO, *et al.*,               :
                                        :
              Respondents.              :

**CHESLER**, District Judge

      This matter comes before the Court upon the Petition for a
Writ of Habeas Corpus under 28 U.S.C. § 2254 filed by Petitioner
Herbert Cowan ("Petitioner"), an inmate confined in New Jersey
State Prison, in Trenton, New Jersey. (Pet., ECF No. 4.) On
February 9, 2007, a jury in Passaic County Court, New Jersey found
Petitioner guilty of (1) conspiracy to commit robbery in the first
degree; (2) four counts of robbery in the first degree; (3)
possession of a handgun for an unlawful purpose in the second
degree; (4) unlawful possession of a firearm in the third degree;
(5) aggravated sexual assault in the first degree; and (4)
possessing a firearm having previously been convicted of certain
crimes. (Pet., ¶¶1-5); <u>State v. Cowan</u> ("<u>Cowan I</u>"), 2009 WL 196187,
at *1 (N.J. Super. Ct. App. Jan. 29, 2009). Petitioner was
sentenced to an extended term of imprisonment of fifty-years on

aggravated sexual assault, with all other sentences on the substantive charges to run concurrently, and a mandatory 85% period of parole ineligibility. Id., at *1. The sentencing judge also imposed a consecutive eight-year term of imprisonment on the "certain persons" conviction under N.J.S.A. 2C:39-7b, with a mandatory five-year term of parole ineligibility. Id. Petitioner appealed his conviction and sentence, and the Appellate Division, on January 29, 2009, affirmed. Id. The New Jersey Supreme Court denied certification. 200 N.J. 208 (July 20, 2009).

Petitioner filed a petition for post-conviction relief on October 20, 2009. (Pet., ¶11.) The PCR Court denied the petition on July 25, 2011. (Id.) The Appellate Division affirmed, State v. Cowan ("Cowan II"), 2013 WL 1907893 (N.J. Super. Ct. App. May 9, 2013), and the New Jersey Supreme Court denied certification, 216 N.J. 364 (Nov. 8, 2013). Petitioner originally filed his habeas petition in this Court on August 1, 2014. He raised the following grounds for relief:

> GROUND ONE:   The trial court abused its discretion and committed reversible error in admitting "other bad acts" evidence as proof of the Defendant's motive.
>
> GROUND TWO:   The prosecutor committed plain error by improperly bolstering the credibility of Co-Defendant Mitchell and the veracity of his testimony [] inculpating the Defendant; the prosecutor improperly injected "Judge Marmo" into the jury's evaluation of Co-

2

Defendant    Mitchell's    credibility    and
veracity;

and,   the   prosecutor   improperly   injected
himself  into  the  jury's  evaluation  of  Co-
defendant    Mitchell's    credibility    and
veracity.

GROUND THREE:  The Defendant's right to a fair
trial was prejudiced by comments made by the
prosecutor in summation.

GROUND FOUR:   The   trial   court   committed
plain  error  in  admitting  proof  of  the
Defendant's DNA because the evidence tested
was  not  reliable  and  because  a  "CHAIN OF
CUSTODY" could not be established.

GROUND FIVE:   Trial   counsel   misinformed
Defendant as to the sentencing consequences if
he were found guilty.

GROUND SIX:   Trial counsel failed to pursue
an exculpatory witness.

(Pet., ECF No. 4 at 24-48.)

I.  BACKGROUND

The factual background in this matter was summarized by the

New Jersey Superior Court, Appellate Division upon Petitioner's

direct appeal.[1] Cowan I, 2009 WL 196187. Larry Jones, David E.

Edwards, and Dondray Goodwin were in an apartment, described by

witnesses as a crack house, in Paterson, New Jersey on May 16,

2003. R.J. and S.L., who were cousins,[2] were also in the apartment.

_____

[1] The facts found by the Appellate Division are presumed correct
pursuant to 28 U.S.C. § 2254(e)(1).
[2] Respondents filed their brief and exhibits in opposition to the

3

Jones, Edwards, and Goodwin had known R.J. and S.L. from the neighborhood for many years, knew they were drug dealers, and knew they had significant drug habits. That night, Jones, Edwards, and Goodwin were in the living room smoking crack cocaine, while R.J. and S.L. were in the bedrooms.

Witnesses heard a knock on the front door, and a voice from outside the door identified himself as "Nick" or "Nicky," the name of R.J.'s former boyfriend. When Jones opened the door, two men armed with handguns entered. One man was wearing dark clothing, the other wore a light colored jacket, and both covered their faces with masks. The man in the dark coat shot a bullet into the ceiling. Everyone in the living room was made to strip to their underwear and lay on the floor as the man in the light-colored jacket searched their clothes for money, valuables, or drugs.

The man in the dark-colored clothing ordered R.J. into the living room, calling her by her nickname. He made her lean over a chair and raped her while holding a gun to her head. Shortly thereafter, both men left. Jones, Edwards, and Goodwin could not identify either of the assailants, but the testimony of the three men was remarkably consistent.

---

habeas petition under seal. The Court has identified the rape victim and her relatives by their initials, to protect their privacy.

S.L., Edwards and Goodwin testified that Lena Coleman, another drug addict that they all knew from the neighborhood, had visited the apartment earlier in the evening, asking for change for a fifty dollar bill. Coleman was accompanied by another known drug user, Tyrone Williams. S.L. was suspicious of this because the apartment had been robbed several times in the past. After Coleman left, S.L. hid her drugs and money in her bedroom. S.L. was in the bedroom when the intruders entered the apartment, and she did not see any of the events that took place in the living room. S.L., however, heard a gunshot, heard someone say "[e]verybody get on the floor," heard someone ask for R.J. by her nickname, and later saw R.J., very upset, saying she had been raped. S.L. left the apartment with her drugs before the police arrived.

R.J. also testified that Coleman had visited the apartment earlier. Later in the evening, when R.J. left her bedroom to go to the bathroom, she saw everyone in the living room lying on the floor. She also saw two men, one in light clothing and one in dark clothing, standing over them. The man in the dark clothing fired a bullet into the ceiling, and the other man took the jewelry R.J. was wearing. R.J. testified that the intruder in the dark clothing pointed a gun to her head, forced her to bend over a chair, and raped her.

R.J. was unable to identify either of the assailants. On cross-examination, R.J. acknowledged that she knew Defendant from the neighborhood, by his nickname, "Hameen." He had never been to the apartment to buy drugs from her. She also testified that she knew Matthew Mitchell from the neighborhood, and he had been to her apartment to buy drugs in the past.

After the intruders left, the Paterson police arrived at the scene, and R.J. was taken to St. Joseph's Hospital to undergo a sexual assault examination. Inside the living room of the apartment, police found a shell casing on the floor, and they recovered a pair of blue sweatpants, a white coat, and two pieces of black cloth in a nearby backyard.

Matthew Mitchell and Lena Coleman were indicted with Defendant. They entered plea bargains with the State and testified at trial. Mitchell claimed that he met Defendant and Coleman earlier in the evening, and that Coleman said she knew "the bitches" who lived in the apartment kept drugs and money there. Mitchell, Coleman, and Defendant agreed to rob the crack house, and it was decided that Coleman would go there first to make sure R.J. and S.L. were home.

Mitchell testified that Coleman left and returned shortly thereafter advising that everyone was in the apartment, as planned. Mitchell put on a white jacket, Defendant put on black sweatpants,

they both wore black face masks, and Defendant was armed with a gun. When they arrived at the apartment, Defendant knocked on the door and used the name "Nick," which Coleman had told him to use. After Mitchell and Defendant entered the apartment, Defendant ordered everyone on the ground, fired a shot into the ceiling; and Mitchell frisked everyone's clothing for money, jewelry or drugs. Mitchell claimed that Defendant ordered R.J. to bend over a chair and then raped her.

Mitchell testified that the rape was unplanned and it upset him. He told Defendant they should leave. They met in the backyard of a nearby house, as planned. He and Defendant split approximately $100 in cash, some jewelry, and some crack pipes, and they gave Coleman some jewelry because she threatened to tell the police. Mitchell identified the white coat found by police as the one he wore during the robbery.

During Mitchell's testimony, the prosecutor asked:

> Q. Okay. I forgot to ask you a question. I'm sorry to back track a little bit. Do you know from personal knowledge from what you saw or what he may have told you over the years, do you know if [defendant] had a drug problem?
>
> A. Yes.
>
> Q. Do you know what he used?
>
> A. Heroin.

7

Defense counsel did not immediately object but later moved for a mistrial. The judge concluded that the evidence was relevant to motive, that it was clear and convincing, and that the jury had already "heard a great deal about the drug culture that [wa]s very much a part of all of the people involved, the victims and the perpetrator." He noted further that the prejudice to defendant was "very minimal," "[b]ecause ... without any mention of it from the witness stand, the jury would obviously come to th[e] conclusion that the motive for this crime was to get drugs and money-and the money for drugs."

Coleman also testified and corroborated much of Mitchell's testimony. Coleman knew Defendant as "Hameen." After finding out that R.J. had been raped, Coleman decided to cooperate with the police. Coleman acknowledged that she was a long-time drug addict. She pled guilty to conspiracy to commit robbery and agreed to testify against Defendant in exchange for a three-year sentence recommendation.

The State introduced evidence of the investigation through the testimony of several law enforcement officers and forensic witnesses. R.J.'s sexual assault examination revealed that sperm was present in her vagina. Subsequent DNA testing excluded Mitchell and Williams as the source, but Defendant could not be excluded as a partial contributor of the sperm. Semen found in R.J.'s panties

was positively identified, by DNA analysis, as belonging to
Defendant. Defendant did not testify or offer any witnesses. He
was found guilty of all charges.

II.  DISCUSSION

    A.   <u>Standard of Review</u>

    28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted
> with respect to any claim that was adjudicated
> on the merits in State court proceedings
> unless the adjudication of the claim--
>
>> (1) resulted in a decision that was
>> contrary to, or involved an unreasonable
>> application of, clearly established
>> Federal law, as determined by the Supreme
>> Court of the United States; or
>>
>> (2) resulted in a decision that was based
>> on an unreasonable determination of the
>> facts in light of the evidence presented
>> in the State court proceeding.

"Contrary to clearly established Federal law" means the state
court applied a rule that contradicted the governing law set forth
in U.S. Supreme Court precedent or that the state court confronted
a set of facts that were materially indistinguishable from U.S.
Supreme Court precedent and arrived at a different result than the
Supreme Court. <u>Eley v. Erickson</u>, 712 F.3d 837, 846 (3d Cir. 2013)
(citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)). The
phrase "clearly established Federal law" "refers to the holdings,

as opposed to the dicta" of the U.S. Supreme Court's decisions. Williams, 529 U.S. at 412. An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. Eley, 712 F.3d at 846 (quoting Renico v. Lett, 130 S.Ct. 1855, 1862 (2010)).

      B.   <u>Analysis</u>

         1.   Ground One

In Ground One of the habeas petition, Petitioner argued that the trial court abused its discretion and committed reversible error by admitting "other bad acts" evidence as proof of the defendant's motive. (Pet., ECF No. 4 at 24-25.) The prosecutor elicited testimony from Codefendant Mitchell that he knew Petitioner had a drug problem, specifically with heroin. Petitioner asserted there was no corroborating evidence that he used drugs; other witnesses testified they never saw him use drugs; and the testimony was prejudicial and inflammatory, leading the jury to a result it might not otherwise have reached.

Respondents cited the Appellate Division's determination that the evidence was properly admitted to establish motive. (Answer to Petition for Writ of Habeas Corpus ("Answer"), ECF No. 12-1 at 16-18.) The Appellate Division stated, in relevant part:

> Defendant contends that Mitchell's testimony
> did not tend to prove any motive for the
> robbery because even if he was addicted to

10

heroin, there was no evidence to suggest that
the apartment contained heroin or that
defendant thought it did. Additionally, he
argues the judge never considered the second
prong of the *Cofield* test, and that any
evidence of his heroin use was neither
"similar in kind" nor "close in time" to the
crimes with which he was charged.

However, there was actual testimony from both
Mitchell and Coleman that defendant agreed to
participate in the robbery specifically to
obtain drugs from the apartment, as well as
money. ... Mitchell's testimony that defendant
used drugs explains his desire to participate
in a crime, the objective of which was to
obtain drugs.

...

Any argument that Mitchell's failure to state
that defendant's heroin use was current at the
time of the robbery made the testimony
inadmissible is likewise not persuasive.

Lastly, the trial judge appropriately
considered ... the minimal prejudice
associated with Mitchell's comments in light
of all the other evidence of the "drug
culture" in the case. Mitchell's and Coleman's
testimony that defendant consciously agreed to
commit a robbery to obtain drugs made this
fleeting testimony regarding his drug use
relevant, and more probative than prejudicial.

Cowan I, 2009 WL 196187, at *5 (internal quotations and citations

omitted.)

    "It is not the province of a federal habeas court to reexamine

state-court determinations on state-law questions. In conducting

habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (citations omitted). A state court's evidentiary error violates the Due Process Clause of the Fourteenth Amendment when the error prevented a fair trial. Duncan v. Henry, 513 U.S. 364, 366 (1995). Respondents assert the state court's determination that the evidence was admissible to show motive was reasonable, therefore, Petitioner is not entitled to habeas relief.

This case involved robbery of a "crack house," and there was testimony from the codefendants that the purpose of the robbery was to obtain money and drugs to perpetuate their drug habits. In light of this evidence, admission of testimony that Defendant was a heroin user, admitted to establish motive for the robbery, did not prevent a fair trial. Even absent this testimony, given the evidence at trial of the widely known drug use associated with the apartment that was robbed, the jury may have inferred Defendant was a drug user. The Appellate Division's denial of this claim was not an unreasonable application of Supreme Court precedent. Therefore, Ground One will be denied.

2. Ground Two

Petitioner contends, in Ground Two of the petition, that prosecutorial misconduct prejudiced his trial. (Pet., ECF No. 4 at 27-31.) Petitioner asserts two errors by the prosecutor in

connection with Codefendant Mitchell's testimony. First, he contends the prosecutor erred by improperly bolstering Mitchell's credibility by eliciting testimony about Mitchell's guilty plea before Judge Marmo. Mitchell testified that upon pleading guilty to four counts of robbery for a ten-year recommended prison sentence, he agreed to provide truthful testimony at the trial of any codefendant. His sentence would be held open until he upheld his end of the bargain. (Trial Transcript 5T67-69; ECF No. 11-5.)

Second, Petitioner argued Mitchell's testimony (Trial Transcript, 5T75-78) about his contradictory statements over whether he had a gun during the robbery were prejudicial. In Mitchell's plea colloquy, which occurred before Petitioner's trial, Mitchell told Judge Marmo that he had a gun during the robbery. At Petitioner's trial, Mitchell testified that he did not have a gun. He had only admitted to such earlier because his lawyer told him to, or else Judge Marmo would not accept his plea deal. Mitchell then testified the prosecutor told him to tell the truth about the gun at Petitioner's trial. Petitioner contends this unfairly suggested to the jury that the prosecutor believed Mitchell was telling the truth.

Third, Petitioner asserts the prosecutor improperly injected Judge Marmo into the jury's evaluation of Codefendant Mitchell's credibility. The prosecutor elicited testimony that Mitchell

13

entered a guilty plea before Judge Marmo. (Trial Transcript, 5T5-6, 67-69, 73-79.) Petitioner argues this testimony suggested to the jury that Judge Marmo had already determined Mitchell was telling the truth because the court accepted Mitchell's plea.

The "clearly established Federal Law" relevant to this claim is Darden v. Wainwright, 477 U.S. 168 (1986). In Darden, the Supreme Court held "a prosecutor's comments will be held to violate the Constitution only if they 'so infected the entire trial with unfairness as to make the resulting conviction a denial of due process.'" Parker v. Matthews, 132 S.Ct. 2148, 2153 (2012)(quoting Darden, 477 U.S. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 627, 642 (1974)).

In addressing this claim on direct appeal, the Appellate Division found no error:

> While it may have been preferable for the prosecutor to have restrained from indicating that Mitchell had pled guilty before the trial judge, there is nothing that logically led to the conclusion that this bolstered his credibility in the jury's eyes.... Defendant has failed to articulate how the mere mention of the judge's name imbued Mitchell's trial testimony with more credibility.
>
> As for the prosecutor's rehabilitation of Mitchell, it would have perhaps been preferable for the testimony to have been adduced on re-direct, after Mitchell had been cross-examined about his prior inconsistent statements. However, we see no error in permitting the prosecutor to have the witness

14

> tell the jury that the State did not "coach"
> him to testify in a certain way. In doing so,
> the State was not vouching for the witness...

Cowan I, 2009 WL 196187, at *7.

The Appellate Division's conclusion was a reasonable application of Supreme Court precedent. Mitchell's testimony that the prosecutor told him to tell the truth is not akin to the prosecutor opining that he was telling the truth. The jury might have credited either of Mitchell's contradictory statements about the gun, or they could have concluded that Mitchell was not honest. The defense argued that Mitchell would say anything to get the plea deal he wanted. (Trial Transcript, 8T32; ECF No. 11-8.)

Furthermore, the mention of the Judge Marmo's name in connection with Mitchell's guilty plea did not unfairly suggest that Judge Marmo endorsed the credibility of Mitchell's testimony at Petitioner's trial. Significantly, Mitchell testified that he had not been sentenced yet; his sentencing was held open until after Petitioner's trial. Thus, the jury knew Judge Marmo had not yet determined whether Mitchell had testified truthfully at Petitioner's trial, and he could still take such into consideration when he sentenced Mitchell.

Admission of the evidence of Mitchell's guilty plea did not unfairly bolster Mitchell's credibility in violation of Petitioner's right to due process. Ground Two of the petition will

15

be denied.

>       3.   Ground Three

In Ground Three, Petitioner asserts an additional claim of prosecutorial misconduct. (Pet., ECF No. 4 at 33-36.) Petitioner argues that the prosecutor attempted, during summation, to coerce the jurors into foregoing their independent judgment of the case. The prosecutor stated, in relevant part:

> Please remember, I think the most important part of being a juror is to listen to what each other has to say. And if you hear something that causes you to say, "you know what. That person has got a point. I didn't think about that before. I think they're right." And it starts you to reassess where you stand. Please don't be too small a person to say, "you know what, I think you guys are right. I changed my mind." That's Okay.

(Trial Transcript, 8T41.)

Petitioner also contends that the prosecutor improperly suggested that the force of gravity caused defendant's DNA to appear in greater quantity in the victim's underwear than in the vaginal and cervical samples. There was no evidence in the record regarding the effects of gravity. (Id. at 8T55.)

Finally, Petitioner suggests that it was improper for the prosecutor to call for the jury to convict Petitioner because the victim had suffered and deserved justice. The prosecutor stated:

> You know, what must that have been like for [the rape victim]. She's entitled to justice.

16

> Somebody has to care. I think it was Mitchell who said, you know, "I was okay with robbing people, that's okay," but what was done to her, that rape, she didn't deserve that. And that's why we're here. Mitchell, of course, testified that he was one of the robbers. And he pleaded guilty and is in jail and he's going to go to prison for ten years for what he did. And he deserves that. And Lena Francis testified to her role it was a minimal jail now and she's going to be serving a prison sentence. She deserves it. And so does he. So does he.

(Trial Transcript, 8T45-46.)

The Appellate Division found Petitioner's claim that the prosecutor committed misconduct during summation was without sufficient merit to warrant discussion and denied the claim. Cowan I, 2009 WL 196187, at *8. When a state court summarily determines that a claim lacks merit, "a habeas court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision in this Court." Harrington v. Richter, 562 U.S. 86, 102 (2011).

Petitioner has not pointed to the holding of any Supreme Court case in support of his contention that the prosecutor's summation denied him due process. Habeas relief is only appropriate "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents."

Id.

As to Petitioner's first contention of prosecutorial misconduct in summation, the Supreme Court has held that telling jurors they should consider the views of the majority, and ask themselves whether their own views were reasonable under the circumstances, did not improperly coerce the jury. See Lowenfield v. Phelps, 484 U.S. 231, 237 (1988) (quoting Allen v. United States, 164 U.S. 492 (1896)("It cannot be that each juror should go to the jury room with a blind determination that the verdict shall represent his opinion of the case at that moment; or, that he should close his ears to the arguments of men who are equally honest and intelligent as himself.") The prosecutor's statements here were very similar to those approved by the Supreme Court, and did not deny Petitioner a fair trial.

Petitioner's second contention of prosecutorial misconduct in summation was the prosecutor's inference about the force of gravity affecting where DNA was found. Even assuming this was an improper inference because it was not based on expert evidence in the trial record, the statement did not prevent a fair trial. The jury could reasonably have believed Defendant committed the rape based on evidence of Defendant's DNA in the victim's underpants.

Finally, the prosecutor stated that the victim was entitled to justice because she was raped, and "somebody has to care." When

considering a due process challenge to a prosecutor's summation, a court must consider the statements "in context and in light of the entire trial." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001)(quoting Donnelly, 416 U.S. at 644).

The majority of the prosecutor's summation was directed at reviewing the evidence of Petitioner's guilt of the charges. The mention of the victim's suffering and call for justice was brief and followed the recitation of evidence, including the testimony of Petitioner's codefendants and the DNA evidence. (Trial Transcript, 8T37-63.) Given the quantum and quality of evidence against Petitioner, the prosecutor's statement about the victim's suffering and need for justice was not so prejudicial as to violate due process. Therefore, Ground Three of the petition will be denied.

4.   Ground Four

In Ground Four, Petitioner challenges the admission of DNA evidence as unreliable and without proper foundation. (Pet., ECF No. 4 at 38-40.) The basis for Petitioner's claim is that Detective Barry Woods testified Petitioner's buccal swabs were placed inside an envelope and "lip-sealed" with the envelope's glue. Woods also testified that DNA evidence should be air-dried and never heat-sealed in plastic. Petitioner contends the envelope was a heat-sealed packet. Additionally, Petitioner asserts the State did not

establish a proper chain of custody because Woods could not testify with 100% certainty that defense counsel was present when defendant's DNA was taken into evidence.

Respondents contend Petitioner's argument about the heat-sealed packet is factually incorrect. (Answer, ECF No. 12-1 at 20-21.) Investigator Barry Woods testified that he placed each DNA swab in paper envelopes, not heat-sealed plastic. (Trial Transcript, 7T169-78; ECF No. 11-7 at 85-90.)

Furthermore, with respect to chain of custody, the Appellate Division stated:

> [w]hether the requisite chain of possession has been sufficiently established to justify admission of the exhibit is a matter committed to the discretion of the trial judge, and his determination will not be overturned in the absence of a clearly mistaken exercise thereof ... Any "defect in the chain of custody goes to the weight, not the admissibility, of the evidence introduced.

Cowan I, 2009 WL 196187, at *8 (internal citations omitted).

The prosecutor questioned Detective Barry Woods about taking a DNA sample from Petitioner in trial preparation. (Trial Transcript, 7T163-79.) Woods testified the swabs were taken in the prosecutor's office and defense counsel was present. (Id. at 7T177.) Before placing the swabs in the envelope and sealing it, the swabs had to air dry. (Id.) Woods was certain defense counsel was present when he put the buccal swabs in the envelope, but he

was not 100% certain defense counsel was present when he sealed the envelope. (Id. at 7T178.)

Defense counsel cross-examined Detective Woods. (Id. at 7T182-86.) Woods testified that the envelope containing Petitioner's buccal swabs was not heat-sealed, the envelope was "lip-sealed" by licking the glue on the envelope. (Id. at 7T184.) Defense counsel also thoroughly cross-examined Christine Brinkos, the expert who tested Petitioner's buccal swabs for a DNA match with the victim. (Trial Transcript, 6T111-22; ECF No. 11-6 at 56-62.)

The Appellate Division held that Petitioner's challenges to the chain of custody went to the weight of the evidence, not its admissibility. Under the habeas standard for a due process claim, erroneous admission of evidence violates due process when the error prevents a fair trial. Duncan, 513 U.S. at 366.

The jury heard how the evidence was sealed, how DNA evidence could be contaminated, and how chain of custody was established here, and they were able to weigh the evidence. There is no Supreme Court precedent requiring that defense counsel be present when DNA evidence taken from the Defendant is sealed. Furthermore, Petitioner's argument that the sample was damaged because it was heat-sealed is factually incorrect. The record shows the sample was sealed, after drying, in a paper envelope, glued shut by

licking the adhesive. Therefore, habeas relief on Petitioner's due process claim in Ground Four will be denied.

     5.   Ground Five

For Ground Five of his petition (ECF No. 4 at 42-45), Petitioner argues trial counsel did not inform him that extended-term sentencing would apply if he was convicted. Petitioner noted the PCR Court rejected this claim by *assuming* the trial judge would have informed Petitioner of his sentencing exposure during pretrial status conferences. Petitioner had not submitted transcripts of any status conferences to show the trial judge did not so inform him.

Petitioner contends he was unable to obtain transcripts of the PCR conferences, therefore, the PCR Court erred in denying his claim, and in denying an evidentiary hearing. Petitioner also asserts that the transcripts of two pretrial conferences, July 20, 2006 and Oct. 16, 2006, do not show the trial judge informed Petitioner about his potential extended-term sentencing.

The Appellate Division, on PCR review, affirmed the PCR Court's denial of the ineffective assistance of counsel claim for failure to inform Petitioner of his extended-term sentencing exposure. Cowan II, 2013 WL 1907893, at *3. The court reasoned:

> Here, defendant's claim that he was unaware of his sentencing exposure if he proceeded to trial is a "bald assertion" unsupported by the

22

> record or any submission made as part of the
> PCR petition. … Jude Reddin noted that the
> transcripts of every pre-trial proceeding were
> not produced, and, we note that during a pre-
> trial conference held on July 20, 2006, the
> prosecutor listed defendant's seven prior
> indictable convictions and advised the judge
> that defendant faced pending murder charges in
> West Virginia.
>
> Most importantly, defendant never stated in
> his petition what the State's pre-trial plea
> offer was and also failed to assert that he
> would have accepted the offer and pled guilty,
> rather than go to trial, had he known of his
> sentencing exposure. At trial, defendant
> vigorously asserted his innocence through
> cross-examination of the State's witnesses and
> by challenging other evidence.

Id. (internal citations omitted).

Defendants are entitled to assistance of competent counsel during plea negotiations. Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012)(citing McMann v. Richardson, 397 U.S. 759, 771 (1970)). To succeed on a constitutional challenge of ineffective assistance of counsel under the standard announced by the Supreme Court in Strickland v. Washington, 474 U.S. 668 (1984), a defendant must first show that counsel's performance "fell below an objective standard of reasonableness." Id. (quoting Strickland at 688.) Strickland requires a second showing, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (quoting

23

Strickland at 694).

When ineffective advice leads to rejection of a plea offer, having to stand trial is the prejudice alleged. Id. at 1385. Therefore, to succeed on an ineffective assistance of counsel claim a defendant must show that:

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id.

Petitioner did not describe what plea offer he received, nor did he offer any explanation of why he would have accepted the plea deal, or that the court would have accepted it. Therefore, Petitioner did not establish the prejudice prong of the Strickland test, and habeas relief will be denied on Ground Five of the petition.

　　　　　6.　Ground Six

Petitioner also asserts that counsel was ineffective for failing to pursue the testimony of an exculpatory witness, Teresa Branham. (Pet., ECF No. 4 at 47-50.) Petitioner explains that in

an extradition hearing, Branham testified that she was in West Virginia, and she saw Defendant every day in May 2003. She had no knowledge of him going to New Jersey that month. The judge who granted extradition found Branham not credible because he could not see how anyone could account for someone's whereabouts on a day to day basis. Petitioner contends the record is devoid of reasons why counsel did not call Branham as a witness, and the PCR Court only speculated that counsel had good reasons for not calling Branham.

The Appellate Division affirmed the PCR Court's denial of this claim. Cowan II, 2013 WL 1907893, at *3. First, the Appellate Division noted Petitioner had not provided the PCR Court with a certification from Branham regarding her potential testimony if called as a witness at defendant's trial. Id. Second, Judge Reddin had the benefit of hearing Branham's testimony at the extradition hearing and found Branham was not credible. Id. Third, at the extradition hearing, Branham did not account for Defendant's whereabouts on the night in question. Id. Fourth, Branham's testimony would not likely have changed the result of the trial because the State presented overwhelming evidence of guilt. Id.

The rape occurred on May 16, 2003, and the sexual assault examination occurred hours after the crime, and Petitioner's DNA was found to be a match. Branham's testimony that she saw Defendant

25

every day in May 2003 and was unaware of him going to New Jersey was unlikely to overcome the DNA evidence. Therefore, it was not unreasonable under <u>Strickland</u> for the Appellate Division to conclude Petitioner was not prejudiced by counsel's failure to call an alibi witness. The Court will deny Ground Six of the habeas petition.

IV.  CONCLUSION

For the reasons discussed above, in the accompanying Order filed herewith, the Court will deny habeas relief.


                        s/ Stanley R. Chesler
                        STANLEY R. CHESLER
                        United States District Judge